# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY, | CIVIL ACTION NO. 3:11-CV-1860 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| MARY LOU McBREARTY, CAROLE VILCKO, and FRANK FALCONE, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are a Motion to Dismiss filed by Defendant Mary Lou McBrearty (Doc. 9) and a Motion to Dismiss (Doc. 16) and a Motion for Summary Judgment (Doc. 30) filed by Plaintiff Allstate Life Insurance Company ("Allstate"). Allstate commenced this interpleader action against McBrearty, Defendant Carole Vilcko, and Defendant Frank Falcone after receiving conflicting claims to the death benefit due under an annuity owned by Defendants' mother, Nicolene Falcone. Allstate contends that, based on the undisputed facts, it is entitled to judgment as a matter of law on McBrearty's breach of contract counterclaim and should be discharged from liability and further participation in this action. McBrearty seeks to dismiss Vilcko and Falcone's crossclaim, which alleges that McBrearty violated her fiduciary duty as Ms. Falcone's attorney-in-fact by unauthorizedly converting funds from Ms. Falcone for her own use. For the reasons below, Allstate's Motion for Summary Judgment[1] will be granted, and McBrearty's Motion to Dismiss will be granted.

---

[1] In its Motion to Dismiss (Doc. 16), Allstate argues that McBrearty's counterclaim should be dismissed because a properly filed interpleader action precludes such a claim. As Allstate makes an identical argument in its Motion for Summary Judgment (Doc. 30), the Court will only consider and address the summary judgment motion.

## BACKGROUND

**I. Allstate's First Amended Complaint for Interpleader (Doc. 3)**

Pursuant to Federal Rule of Civil Procedure 22, Allstate commenced this diversity action by filing its Complaint for Interpleader on October 10, 2011. (Doc. 1.) Allstate filed a First Amended Complaint for Interpleader (Doc. 3) on December 28, 2011, in which it alleges the following:

On or about April 15, 2002, Ms. Falcone purchased a Flexible Premium Deferred Annuity, certificate number GA0686886 ("the Annuity"), from Glenbrook Life and Annuity Company ("Glenbrook"). (*Id.* at ¶ 7, Ex. A.) Allstate is a successor to Glenbrook, which merged with Allstate in 2005. (*Id.* at ¶ 1.) At the time of the Annuity's purchase, Ms. Falcone designated McBrearty as the beneficiary entitled to receive any death benefit payment due under the Annuity if Ms. Falcone died before April 15, 2012. (*Id.* at ¶ 8.)

On or about February 24, 2006, Allstate received a beneficiary change request ("BCR"), which was dated February 21, 2006 and appeared to bear Ms. Falcone's signature, which designated McBrearty, Vilcko, and Falcone as the Annuity's beneficiaries. (*Id.* at ¶ 10, Ex. B.) On or about March 21, 2006, Allstate received a BCR, which was dated March 20, 2006 and appeared to bear Ms. Falcone's signature, designating McBrearty as the Annuity's sole beneficiary. (*Id.* at ¶ 11, Ex. C.)

On or about January 13, 2011, Allstate received a BCR, which was dated January 12, 2011 and appeared to bear Ms. Falcone's signature, designating McBrearty, Vilcko, and Falcone as beneficiaries in equal share under the Annuity. (Doc. 3 at ¶ 12, Ex. D.)

On or about January 21, 2011, Allstate received two forms pertaining to the Annuity. The first form, a BCR that was dated January 21, 2011 and appeared to be signed by "Mary

2

Lou McBrearty POA," designated McBrearty as the Annuity's sole beneficiary. (*Id.* at ¶ 13(i), Ex. E.) The other form, which was also dated January 21, 2011 and appeared to be signed by "Mary Lou McBrearty POA," listed McBrearty and Vilcko under the section providing for changes to the name or address of the "owner/insured/beneficiary/annuitant." (*Id.* at ¶ 13(ii), Ex. F.)

On or about January 24, 2011, Allstate received two more forms concerning the Annuity. The first was a BCR, which was dated January 24, 2011 and appeared to bear Ms. Falcone's signature, designating McBrearty as the Annuity's sole beneficiary. (*Id.* at ¶ 14(i), Ex. G.) This BCR also appeared to be signed by McBrearty in the area designated for the irrevocable beneficiary's signature. (*Id.*) The other form, which was dated January 24, 2011 and appeared to bear Ms. Falcone's signature, listed McBrearty and Vilcko under the section for changes to the name or address of the "owner/insured/beneficiary/annuitant." (*Id.* at ¶ 14(ii), Ex. H.) Allstate received another form identical to the second form the following day. (*Id.* at ¶ 15, Ex. I.)

On or about January 27, 2011, Allstate received a BCR, which appeared to bear Ms. Falcone's signature, designating McBrearty as the Annuity's beneficiary. (Doc. 3 at ¶ 16, Ex. J.) On or about January 31, 2011, Allstate received a BCR, which was dated January 28, 2011 and appeared to bear Ms. Falcone's signature, designating "Mary Lou McBrearty, Irrevocable Beneficiary" as the Annuity's sole beneficiary. (*Id.* at ¶ 17, Ex. K.). This BCR also appears to be signed by McBrearty in the area designated for the irrevocable beneficiary's signature. (*Id.*)

On or about April 28, 2011, Allstate received a BCR, which appeared to bear Ms.

3

Falcone's signature, designating McBrearty, Vilcko, and Falcone as beneficiaries in equal share under the Annuity. (*Id.* at ¶ 18, Ex. L.) The letter from Vilcko and Falcone's counsel that accompanied the BCR stated that Ms. Falcone, upon learning that McBrearty had attempted to make herself the Annuity's sole beneficiary, confirmed that she wanted her three children to share equally in the Annuity's death benefit and signed the BCR. (*Id.*) Ms. Falcone died on May 8, 2011. (*Id.* at ¶ 19.) On or about June 8, 2011, Allstate received a letter from McBrearty's counsel asserting that McBrearty, as the Annuity's irrevocable beneficiary at the time of Ms. Falcone's death, was entitled to the entire death benefit due under the Annuity. (*Id.* at ¶ 20, Ex. M.)

Faced with competing claims to the Annuity's death benefit, Allstate commenced this interpleader action. Allstate seeks an order: (1) authorizing and directing Allstate to deposit the death benefit funds into the Court registry pursuant to Federal Rule of Civil Procedure 67; (2) requiring Defendants to interplead and settle between themselves their conflicting claims to the sum to be deposited with the Court and discharging Allstate of any potential future liability with respect to that sum pursuant to 28 U.S.C. § 1335; and (3) enjoining Defendants from instituting or prosecuting any proceeding in any court regarding the death benefit or the Annuity without further order of the Court pursuant to 28 U.S.C. § 2361. (Doc. 3 at ¶¶ 25–26.) It also seeks its reasonable attorneys' fees and costs. (*Id.* at 10.)

## II.     McBrearty's Counterclaim (Doc. 6)

On March 21, 2012, McBrearty answered Allstate's interpleader complaint. (Doc. 6.) McBrearty does not dispute that Allstate received the various forms, correspondence, and BCRs in this matter. (Doc. 6 at ¶¶ 10–20; Doc. 33 at ¶¶ 4–7.) By way of further answer,

she avers that numerous forms and BCRs were sent to Allstate in January 2011 due to forms being lost as well as conflicting advice from Allstate regarding whether certain forms could be effectuated by an individual with power of attorney. (Doc. 6 at ¶¶ 13–16.) McBrearty also avers that an Allstate representative advised her and her mother that the "irrevocable beneficiary" designation would prevent future beneficiary changes to the Annuity without the consent of the Annuity's owner and the irrevocable beneficiary. (*Id.* at ¶¶ 13, 17.) She further avers that an Allstate representative stated that the proper way to designate an irrevocable beneficiary in a BCR was to add "irrevocable beneficiary" after the person's name on the form. (*Id.* at ¶ 17.) Additionally, she denies the statements regarding Ms. Falcone's intent in the April 2011 letter penned by Vilcko and Falcone's counsel. (*Id.* at ¶ 18.)

McBrearty also filed a counterclaim for breach of contract against Allstate, alleging that she, as the Annuity's irrevocable beneficiary, is entitled to the Annuity's death benefit and Allstate is liable for failing to pay those funds to her. (Doc. 6 at ¶¶ 39–45.) She alleges that Allstate is not an innocent stakeholder here because it accepted the April 28, 2011 BCR even though she did not consent to the change in beneficiaries. (*Id.* at ¶¶ 43–44.) McBrearty also alleges that Allstate, in contravening its own instructions and policies and failing to fully investigate Ms. Falcone's intent, acted in bad faith and created the issue that it now asks the Court to resolve. (*Id.* at ¶¶ 31, 37, 39.) In support, she points to two letters from an Allstate claims representative that acknowledge that it could be argued that Allstate should not have honored the April 28, 2011 BCR without McBrearty's consent. (Doc. 33, Ex. E–F.) In McBrearty's view, Allstate acted unlawfully by reversing her irrevocable beneficiary status and breached its contractual obligation by refusing to pay her the entire

5

death benefit due under the Annuity. (*Id.* at ¶¶ 39–45.)

**III.    Vilcko and Falcone's Crossclaim (Doc. 7)**

On March 21, 2012, Vilcko and Falcone answered Allstate's interpleader complaint. (Doc. 7.) They aver that although Ms. Falcone told McBrearty that she wanted the Annuity's death benefit distributed evenly among her three children, McBrearty persuaded her to unknowingly sign a BCR in 2006 that made McBrearty the Annuity's sole beneficiary. (*Id.* at ¶ 11.) They further aver that when Vilcko learned of the Annuity in January 2011, she discussed it with Ms. Falcone, who reiterated her wishes and signed a BCR naming her three children as the Annuity's beneficiaries. (*Id.* at ¶ 12.) With respect to the January 27, 2011 BCR naming McBrearty as the Annuity's Irrevocable beneficiary, Vilcko and Falcone aver that McBrearty forged Ms. Falcone's signature, which appears to be different than all of her other signatures. (*Id.* at ¶ 17.) They ask the Court to divide the proceeds of the Annuity equally among McBrearty, Vilcko, and Falcone. (*Id.* at 4.)

Vilcko and Falcone also brought a crossclaim against McBrearty, claiming that she abused her fiduciary relationship as Ms. Falcone's attorney-in-fact by converting Ms. Falcone's funds for her own benefit. (Doc. 7 at ¶ 38.) They allege that Ms. Falcone vested power of attorney, which does not grant the agent authority to make gifts, in McBrearty and Vilcko in September 1985. (*Id.* at ¶¶ 32–33.) They further allege that a review of Ms. Falcone's checking account unearthed several discrepancies in the check register from 2009, including nearly $2,000.00 worth of teller withdrawals. (*Id.* at ¶ 34.) Finally, they allege that in August 2012, McBrearty withdrew $16,440.24 from a certificate of deposit in Ms. Falcone's name, but these funds were never deposited in any of Ms. Falcone's financial accounts. (*Id.* at ¶ 35.) Vilcko and Falcone ask the Court to order McBrearty to provide a

6

written account of all disbursements made for or on behalf of Ms. Falcone and also declare the conversion of funds invalid under the terms of the power of attorney. (*Id.* at 6.)

## LEGAL STANDARDS

### I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint, in whole or in part, for a "lack of subject-matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions may take one of two forms: a facial attack to the sufficiency of the pleading or a factual attack. *See Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009). A factual attack involves a claim "that the court in fact lacks subject-matter jurisdiction, no matter what the complaint alleges." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

When subject-matter jurisdiction is factually challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). This is a much more demanding standard than that applied to Rule 12(b)(6). *Id.* And, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Thus, "in reviewing a factual attack, the court may consider evidence outside of the pleadings." *Gould Elecs.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir.1997)). As such, "no presumptive truthfulness attaches to

7

plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim." *Mortensen*, 549 F.2d at 891.

## II. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.,* 83 F.3d 68, 70 (3d Cir. 1996). However, where there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson,* 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof,

simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## **ANALYSIS**

**I.     McBrearty's Motion to Dismiss Vilcko and Falcone's Crossclaim (Doc. 9)**

McBrearty moves to dismiss Vilcko and Falcone's crossclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction over it.  In their crossclaim, Vilcko and Falcone allege that McBrearty abused her status as Ms. Falcone's power of attorney by withdrawing $16,440.24 from a certificate of deposit owned by Ms. Falcone in 2010 and not depositing any of it in Ms. Falcone's accounts.  (Doc 7 at ¶ 35.)  They further allege that there are a number of discrepancies in the 2009 check register of Ms. Falcone's checking account, including nearly $2,000.00 of teller withdrawals.  (*Id.* at ¶ 34.)  They claim that McBrearty violated her fiduciary duty to Ms. Falcone (*Id.* at ¶ 38) and ask the Court to order her to provide a written account of all disbursements made for Ms. Falcone or on her behalf and declare the conversion of funds to be null, void, and invalid under the power of attorney (*Id.* at 6)

Federal Rule of Civil Procedure 13(g) provides that:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.  The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g).  "The basis for determining the propriety of a cross-claim is the same as that used in determining a compulsory counterclaim, that is, whether the claim bears a logical relationship to the original action."  *Hankin Family P'ship v. Upper Merion Twp.*, No. 01-1622, 2012 WL 43599, at *10 (E.D. Pa. Jan. 6, 2012) (citing *Metro Life Ins. Co. v. Kubicheck*, 83 F. App'x 425, 430 (3d Cir. 2003); *Jefferson Standard Ins. Co. v. Craven*, 365 F. Supp. 861, 866–67 (E.D. Pa. 1973)).  "A logical relationship exists where

trial on the claims separately would involve a substantial duplication of time and effort by the parties and the courts because the claims involve many of the same factual or legal issues." *Weiss v. Advest, Inc.*, 607 F. Supp. 799, 802 (E.D. Pa. 1984) (citing *Jefferson Standard Ins. Co.*, 365 F. Supp. at 867).

Here, Vilcko and Falcone's crossclaim does not relate to any property that is the subject matter of the original action (*i.e.*, the Annuity). It also does not arise out of the transaction or occurrence that is the subject matter of the original action. In addition, the crossclaim does not bear a logical relationship to the original action. The counterclaim claims that McBrearty abused her fiduciary relationship as Ms. Falcone's attorney-in-fact by converting funds from Ms. Falcone's checking account in 2009 and her certificate of deposit in 2010 without authorization. It asks the Court to order McBrearty to provide a written account of all disbursements made for or on behalf of Ms. Falcone and declare McBrearty's conversion of Ms. Falcone's funds as invalid under the power of attorney. The original action, on the other hand, was instituted by Allstate to resolve the competing claims of McBrearty and Vilcko and Falcone to the death benefit due under the Annuity. Therefore, because Vilcko and Falcone's crossclaim does not bear a logical relationship to the original interpleader action, the Court will grant McBrearty's motion to dismiss Vilcko and Falcone's crossclaim (Doc. 9). Additionally, the Court will not grant Vilcko and Falcone leave to amend their crossclaim, as permitting a curative amendment would be futile here.

II. **Allstate's Motion for Summary Judgment (Doc. 30)**

Rule 22 of the Federal Rules of Civil Procedure provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as

defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). "The purpose of the interpleader device is to allow 'a party who fears being exposed to the vexation of defending multiple claims to a limited fund . . . that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (quoting 7 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1704 (3d ed. 2001)). "[I]nterpleader allows a stakeholder who 'admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] . . . to file suit, deposit the property with the court, and withdraw from the proceedings.'" *Id.* (quoting *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)). "The typical interpleader action proceeds in two distinct stages." *Id.* First, the court determines whether the interpleader action is proper and whether to discharge the stakeholder from liability. *Id.* Next, the court determines the rights of the claimants. *Id.*

McBrearty contends that the January 28, 2011 BCR designated her as the Annuity's Irrevocable beneficiary, meaning that no beneficiaries could be added to the Annuity without her written consent. (Doc. 34 at 5.) She argues that by processing the April 28, 2011 BCR, which added Vilcko and Falcone as Annuity beneficiaries, without first obtaining her written consent, Allstate contravened its own rules and policies regarding the Annuity and acted unlawfully. (*Id.*) She claims that Allstate is liable to her for breach of contract by designating Vilcko and Falcone as beneficiaries and refusing to pay her the entire death benefit due under the Annuity. (*Id.*) Additionally, she contends that because Allstate created the beneficiary issue before the Court, it is a wrongdoer and is not entitled to relief by interpleader. (*Id.*)

12

"It is true that, '[b]ecause interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines.'" *Hovis*, 553 F.3d at 263 (quoting *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999)). "It is a general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit . . ., he cannot have relief by interpleader." *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988). This rule "is meant to prevent a tortfeasor, facing claims from multiple parties, from using the interpleader device to cap its liability." *Hovis*, 553 F.3d at 263 n.4.

It is difficult for the Court to see how Allstate is at blame for causing the controversy in this matter. Allstate was presented with competing claims for the death benefit due under the Annuity. In the three months before Ms. Falcone's death in May 2011, Allstate had received a flurry of BCRs regarding the Annuity. Based on these BCRs and the letter from Vilcko and Falcone's counsel that accompanied the final BCR, Allstate faced significant questions regarding the validity of the designation of McBrearty as irrevocable beneficiary and Ms. Falcone's intent. Allstate indicates as much in the letters written to McBrearty's counsel by an Allstate claims representative. Furthermore, the letters demonstrate Allstate's belief that had it not promptly addressed those issues by honoring the final BCR, Vilcko and Falcone would have raised additional issues after Ms. Falcone's death. (Doc. 33, Ex. E–F.) There is every indication that, had Allstate paid the death benefit to McBrearty or failed to honor the final BCR, it would have faced a suit from Vilcko and Falcone relating to the same funds. Therefore, because there was a genuine dispute over entitlement to the Annuity's death benefit, and Allstate was

13

not to blame for its existence, the interpleader action was properly brought.

Allstate also contends that it is entitled to judgment as a matter of law on McBrearty's breach of contract counterclaim. The Court agrees. "[W]here a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the funds with the court." *Hovis*, 553 F.3d at 264 (citations omitted). However, the counterclaim here is not independent of the issue that the interpleader action was brought to settle—who is entitled to the Annuity's death benefit—because it concerns Allstate's failure to pay McBrearty the entire death benefit. "[W]here a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot be itself a breach of legal duty." *Hovis*, 553 F.3d at 265. Allstate has not chosen sides between the adverse claimants here, as it has not distributed any of the Annuity's death benefit to any potential beneficiary. Instead, it has properly filed an interpleader action to settle the controversy. Accordingly, Allstate is entitled to judgment as a matter of law on McBrearty's breach of contract counterclaim and its motion for summary judgment will be granted.[2] Allstate will be directed to deposit the current amount of the Annuity's death benefit[3] with the Court registry in an interest bearing account within twenty days of the date of this Memorandum and Order. Upon

---

[2] The Court, in its discretion, will decline to award Allstate its attorney fees and costs. *See Emmco Ins. Co. v. Frankford Trust Co.*, 352 F. Supp. 130, 133 (E.D. Pa. 1972) ("The prevailing principle in federal interpleader actions . . . is that it is within the discretion of the court to award the stakeholder's costs out of the deposited fund.").

[3] As of January 28, 2013, the benefit was equal to $118, 076.05. (Doc. 31 at 10.)

14

payment of the funds with the Clerk of Court, Allstate shall be released and discharged from any further liability to any party in this action or arising out of the Annuity.  *See* 28 U.S.C. §§ 1335, 2361; Fed. R. Civ. P. 67.

## **CONCLUSION**

For all the above reasons, Allstate's Motion for Summary Judgment (Doc. 30) and McBrearty's Motion to Dismiss (Doc. 9) will be granted.   An appropriate Order follows.


| May 24, 2013 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
|  | United States District Judge |